IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JONATHAN BISHOP    :
(AIS# 272754),     :
           :
  Plaintiff,     :
           :
vs.         :   CIVIL ACTION 15-0252-WS-C
           :
REGINA BOLAR, *et al.*,   :
           :
  Defendants.   :

REPORT AND RECOMMENDATION

   Plaintiff Jonathan Bishop, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a complaint and an amended complaint (docs. 1, 10, 13) under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and GenL.R. 72(a)(2)(R), and is now before the undersigned on the motion for summary judgment of Defendants, Regina Bolar, William Gillis, Brian Ezell, and Kelly Smith (docs. 26, 27). For the reasons stated below, it is recommended that the motion for summary judgment of these Defendants be granted and that Plaintiff's action against them be dismissed with prejudice.

I.  **Summary of Allegations.**[1]

   In this suit, Plaintiff Bishop claims that the defendants acted with deliberate indifference to his safety by failing to protect him from an attack by fellow inmate, Gerard McCree, on April 15, 2015. Based on the allegations in the

---

[1]  The undersigned has made his "determination of facts" by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff Bishop,] the nonmoving party." *E.g., Benson v. Tocco, Inc.,* 113 F.3d 1203, 1207 (11th Cir. 1997).

complaint, the attack was apparently driven by a prior dispute that occurred on March 26, 2015, between the two inmates over a cell phone or the possession thereof.

According to the complaint, in March of 2015, Bishop and McCree were housed approximately two cells apart from one another in the segregation unit at Homan Correctional Facility ("Holman").[2]  (Doc. 13 at 8).  While assigned to the segregation unit, Bishop claims he possessed a cellular phone, which he gave to inmate McCree so that McCree could recharge the battery of the phone.  (*Id*. at 4).  Bishop claims, however, that inmate McCree failed to return the cell phone and, instead, told Plaintiff "he was keeping [the] phone."  (*Id*.).

Consequently, Bishop executed a plan to retrieve the phone from McCree's cell.  On March 26, 2015, while McCree was in the shower, Bishop awaited his turn to be removed from his cell and taken to the showers.  When Officer Gillis approached Bishop to escort him, Bishop asked if Gillis would give a magazine to another inmate, Inmate Maul, and Officer Gillis agreed.  (Doc. 13 at 4, 8; Doc. 27-1 at 4).  Officer Gillis and Bishop proceeded down the segregation tier and, as Gillis turned his back from Bishop to hand Maul the magazine, Bishop walked off from Gillis "in a fast pace." (Doc. 27 at 2-3).  Unbeknownst to Officer Gillis, Bishop entered McCree's cell and retrieved the phone.  (Doc. 27 at 3; Doc. 13 at 4, 8).  When Officer Gillis turned back toward Bishop, he observed Bishop walking ahead of him; he ordered Bishop to "slow down" and then proceeded to escort Plaintiff to the shower facilities.  (Doc. 27 at 3; Doc. 27-1 at 4).

---

[2]      Bishop is no longer incarcerated at Holman.  (27 at 2).  On May 19, 2015, he was transferred to and is currently housed at St. Clair Correctional Facility in Springville, Alabama.  (Doc. 27-6 at 12).

However, along the way, Plaintiff indicated that he no longer wished to shower, and Bishop was returned to his cell.   (Doc. 27 at 3; Doc. 27-1 at 4).

When McCree returned to his cell from showering, he reported to officers that items from his cell were missing.  (Doc. 13 at 8).  Because Officer Smith had observed Bishop enter McCree's cell, Officers Smith and Gillis performed a search of Bishop's cell.  (*Id*.).  Pursuant to the search, the officers discovered a contraband cell phone and a homemade cell phone charger in Bishop's cell.  (*Id*.; Doc. 27 at 3; Doc. 27-1 at 4).

During the cell search, Bishop alleges inmate McCree made "several verbal death threats" to him, which led Bishop to request being transferred to a cell further away from McCree's.  (Doc. 13 at 8).  Bishop claims, however, that both officers denied his request to move to another cell.  (*Id*.).  Bishop further alleges he subsequently asked Lieutenant Regina Bolar, on March 26, 2015, to move him to another cell due to the death threats from McCree, but Bolar stated Plaintiff would "be alright" and denied any cell transfer.[3]  (*Id*.).

Approximately three weeks later, on April 15, 2015, five officers were working in the segregation unit to transfer segregation inmates from their cells to individual outdoor walk cages.  (Doc. 27 at 3).  Officers Ezell, Daily, and Wilson were in charge of removing inmates from their cells, and two additional officers, located outside the dorm unit, were responsible for letting inmates into individual walk cages.  (Doc. 27 at 3; Doc. 27-1 at 7).  Officer Ezell avers he placed McCree in handcuffs, pat searched him for weapons, and, finding none, he sent

---

[3]      Defendants Gillis, Smith, and Bolar deny hearing McCree threaten Plaintiff in any way and further deny that Plaintiff requested to be moved.  (Doc. 27 at 3; Doc. 27-2 at 1; 27-3 at 1; 27-4 at 1).

McCree to the walk cages.  (Doc. 27 at 3).  After watching McCree exit the dorm unit and go outside, Officer Ezell continued his duties placing Plaintiff in handcuffs, pat searching him for weapons, and sending him to the walk cages. (Doc. 27-5 at 1).  As Plaintiff proceeded down the stairs, "McCree came running up the stairs" without handcuffs, met Plaintiff at the middle tier, and "stabbed the Plaintiff with a piece of Plexiglass."  (Doc. 27 at 3; Doc. 13 at 9; Doc. 27-5 at 1). Officers quickly responded to the assault, and Defendants assert that McCree complied with their orders to stop the attack.  (Doc. 27 at 3).

Plaintiff was immediately taken to the health care unit where his injuries were noted and treated.  (*Id*.; Doc. 27-6 at 7).  The body chart following the assault revealed multiple lacerations (approximately nine to eleven), primarily to Plaintiff's head, ranging in diameter from .5 centimeters to 2.5 centimeters.  (Doc. 27-1 at 9; Doc. 27-6 at 4).  Additionally, Plaintiff stated to the nurse, "I told you this would happen to get me from down there."  (Doc. 27-1 at 9.). Approximately a week and a half after the incident, Plaintiff filed a sick call request form complaining that, since the April 15 attack, he was waking throughout the night "in a cold sweat with a rapid heartbeat."  (Doc. 27-6 at 10). He was referred to and examined by the mental health department at the prison but no acute distress was observed, no urgent or emergency treatment was needed, and no medication or follow-up was prescribed.  (*Id*. at 8-9).

Plaintiff Bishop now brings this action against Lieutenant Bolar and Officers Gillis, Smith, Ezell, and Daily. [4]  (Doc. 13).  Plaintiff challenges that his

---

[4]     Plaintiff named Officer Earl Daily as a defendant in this action (*see* docs. 1, 13); however, Defendant Daily has yet to be served with this suit. (Doc. 20).  Thus, Defendant Daily is not a party to this motion for summary judgment.  (Docs. 26-28). Notably, the allegations against Officer Daily are identical to those asserted against

Eighth Amendment rights were violated when defendants, Lieutenant Bolar and
Officers Gillis, Smith, Ezell and Daily, knew of the verbal death threats against
him and failed to protect him from the attack subject to this suit.[5]  (Doc. 1 at 5-6,
10-11).  Plaintiff Bishop brings this suit requesting compensatory damages and
any other relief the Court deems proper.  (Doc. 13 at 7).

Defendants Bolar, Gillis, Smith, and Ezell answered Plaintiff's suit
denying the allegations and further asserting the affirmative defenses of
sovereign and qualified immunity.  (Docs. 26, 27).  The Court determined the
special reports filed by Defendants should be treated as a Motion for Summary
Judgment (doc. 28), and after review of all pleadings in this action, including
Plaintiff's response to the summary judgment motion (doc. 29), the Court has
determined this motion is ripe for consideration.

## II.      Summary Judgment Standard.

---

Defendant Brian Ezell, who is a party to this motion.
        Additionally, the Court notes that Warden Walter Myers, who was originally
named as a defendant in this suit, was voluntarily dismissed by Plaintiff from this action
on July 9, 2015.  (Doc. 10).
[5]      Plaintiff's amended complaint puts forth a federal tort claim of negligence
against defendants.  (Doc. 13).  However, such a claim is not cognizable in a § 1983
action, as negligence does not rise to the level of a constitutional violation to support a §
1983 claim.  A successful § 1983 claim shows a violation of a constitutional right, not
merely a violation of a federal law.  *See Paul v. Davis*, 424 U.S. 693, 700-01, 47 L. Ed. 2d
405, 96 S. Ct. 1155 (1976) (Section 1983 provides redress only when state employees
infringe on the *rights* "secured by the Constitutional and laws" of the United States.).
Section 1983 requires that a state actor be deliberately indifferent to a known risk of
harm to constitute a failure to protect claim.  *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976).
        *Pro se* pleadings, however, must be read liberally to determine "whether
jurisdiction to consider [them] can be founded on a legally justifiable base." *Fernandez v.
United States*, 941 F.2d 1488, 1491 (11th Cir. 1991).  Therefore, the Court has an
"obligation to look behind the label of a motion filed by a *pro se* inmate and determine
whether the motion is, in effect, cognizable under a different remedial statutory
framework." *United States v. Jordan*, 915 F.2d 622,624–25 (11th Cir.1990).  Thus, the
undersigned concludes that this action should be construed as asserting an Eighth
Amendment violation for failure to protect.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[6]; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

---

[6]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases."  Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1289-90

(S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id.* In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe

it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[7]

### III.     Immunity Defenses.

To the extent Plaintiff is proceeding against the defendants in their official capacities, those claims fail.  The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Plaintiff alleges that Defendants Bolar, Gillis, Smith, Ezell and Daily, all of whom were employed by the State of Alabama Department of Corrections as officers at Holman at the time of the incident alleged in the complaint, violated his constitutional rights.  It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment.  *See Taylor v. Adams*, 221 F.3d

---

[7]          "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  11th Cir. R. 36-2.

1254, 1256 (11th Cir. 2000) (Those operating "jails are state officers protected by

Eleventh Amendment immunity."); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429

(11th Cir. 1997) ("[J]ailers are state officials for the purpose of Eleventh

Amendment immunity."); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992)

("Sheriff's departments and police departments are not usually considered legal

entities subject to suit."); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) ("[A]

sheriff is an executive officer of the state.").

> Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment).

*Johnson v. Folks*, 2014 U.S. Dist. LEXIS 16027, 7-9 (S.D. Ala. Jan. 17, 2014) (quoting

*Johnson v. Keaton*, No. 2:05-CV-1238-WKW, 2008 U.S. Dist. LEXIS 75356, 2008 WL

4493242, at *6 (M.D. Ala. Sept. 29, 2008)).

It is clear from the pleadings that the defendants were state officials at the

time the action arose and are entitled to sovereign immunity under the Eleventh

Amendment for claims seeking monetary damages from them in their official

capacities.  Therefore, the defendants are entitled to absolute immunity from

Plaintiff's claims asserted against them in their official capacities.

Additionally, the defendants have asserted the defense of qualified immunity.  (*See* Docs. 26, 27).  Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The Supreme Court has established a two-prong test for evaluating a claim of qualified immunity: (1) whether a constitutional right has been violated based on the facts alleged; and (2) whether the right was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  The Court may exercise its sound discretion in deciding which of the two prongs should be addressed first based on the circumstances of the case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (The Court held that *Saucier's* two-step analysis, while often appropriate, was not mandatory).

In this action, as discussed below, the Court finds Bishop has failed to establish that the defendants violated his Eighth Amendment rights; therefore, "there is no necessity for further inquiries concerning qualified immunity." *Harrison v. Culliver*, 746 F.3d 1288, 1300, n.15 (11th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)); *Losey v. Thompson*, 596 F. App'x. 783, 789-790 (11th Cir. 2015) ("Because . . . [plaintiff's] Eighth Amendment claim of deliberate indifference fails, [defendant] has no need of qualified immunity, so we do not separately address it.").

## IV.   Analysis.

Bishop has filed the present action pursuant to 42 U.S.C. § 1983 alleging the defendants failed to protect him from being attacked on April 15, 2015 in

violation of his Eighth Amendment rights.  Specifically, Bishop claims
Defendants Ezell and Daily violated his Eighth Amendment rights by "fail[ing]
to follow prison regulations" (that being securing inmate McCree in a walk cage
prior to releasing Bishop out of his cell) which "could have reasonably prevented
the assault."  (Doc. 29 at 5; Doc. 13 at 9).  Bishop also contends that Defendants
Bolar, Gillis, and Smith failed to protect him from the assault by denying him a
cell transfer to a location further away from inmate McCree.  (Doc. 29 at 6-7; Doc.
13 at 5-6).

A review of the record reveals, and it is undisputed by the parties, that on
March 26, 2015, Bishop entered inmate McCree's cell and retrieved a cell phone
and that a contraband phone and charger were subsequently seized from
Bishop's cell.  It is further undisputed that Defendants Bolar, Gillis, and Smith
did not transfer Bishop to a cell located further away from McCree on March 26,
2015.  Additionally, while the defendants deny hearing McCree make any verbal
threats to Bishop, for purposes of this motion, the Court will consider that
Defendants Bolar, Gillis, and Smith were aware of death threats made by McCree
to Bishop on March 26, 2015, as described by Bishop in his pleadings.  (Doc. 29 at
7; Doc. 13 at 8).  Lastly, it is undisputed that Bishop was attacked by McCree on
April 15, 2015 during the transfer of inmates from their cells to the outdoor
exercise cages.

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party injured in

an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. CONST. amend. VIII, and the amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoner." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted).  Prison officials may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with knowledge of this risk, the official fails to take reasonable measures to abate the danger.  *Farmer*, 511 U.S. at 828.  However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates

into constitutional liability for prison officials responsible for the victim's safety."

*Id*. at 834.

> "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff. They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).  The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc)).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir. 1982).

*Banks v. Jones*, Case No. 2:13-CV-21-WHA, 2015 U.S. Dist. LEXIS 161481, *10-11 (M.D. Ala. Oct. 30, 2015).

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.  It is not enough that a plaintiff proves that the defendants should have known of the risk; conscious awareness is the key.  S*ee, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."); *Burnette v. Taylor*, 533 F.3d 1325 (1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident.]").  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of

fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. (quoting *Farmer*, 511 U.S. at 842).   However, '"deliberate indifference" entails more than mere negligence.'" *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

The Eleventh Circuit has explained that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  *Id*. at 1245-46 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)) (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

The courts are aware "that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable.  A prisoner has a right, secured by the eighth ... amendment[ ], to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]'" *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320-21 (11th Cir. 2005) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973) (internal citations omitted)).  Regarding substantial risk of serious harm, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," ' but must be balanced against competing

14

penological goals."  *Id*. (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).

"[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'"  *Whitley*, 475 U.S. at 320 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393) (1984); *Farmer*, 511 U.S. at 844-45 (A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions.") (citations omitted).  "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (U.S. 1979).  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  *Farmer*, 511 U.S. at 844-45

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

   1.  Denial of Cell Transfer on March 26, 2015.

Bishop challenges the denial of Defendants Bolar, Gillis, and Smith to transfer him to a cell further away from inmate McCree's cell on March 26, 2015, caused or attributed to the subsequent attack on April 15, 2015.  He supports this allegation by explaining that Holman's segregation unit consists of three tiers

and a sum of 200 cells.  (Doc. 29 at 6).  He claims that if Defendants "would have responded reasonably [to McCree's threats] by moving the plaintiff to another tier, then the attack would have never taken place because McCree would have not have had the opportunity to get close the plaintiff."  (Doc. 29 at 6).

While the undersigned notes that Bishop may be correct, his assertion is based purely on hindsight and speculative thinking which is insufficient to support a constitutional claim of deliberate indifference.  *See Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("We will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment.").  Instead, the Court must determine whether or not the defendants knew of a substantial risk of serious harm posed to Bishop at the time they denied his move to another cell.  After reviewing the facts in a light favorable to Plaintiff, the Court cannot find that an obvious risk of harm existed to Bishop, nor that these Defendants were subjectively aware of a substantial risk of serious harm to Bishop, or that they acted unreasonably under the circumstances; thus, these Defendants "cannot be found liable under the Cruel and Unusual Punishments Clause."  *Farmer*, 511 U.S. at 844-45 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

The Eleventh Circuit gives guidance in *Brooks v. Powell*, 800 F.3d 1295 (11th Cir. 2015), as to the level of proof necessary to establish an officer's liability under the Eighth Amendment for an officer's failure to protect an inmate from an attack.  In *Brooks*, the plaintiff was housed in an adjacent cell from an inmate who threatened to physically and sexually assault him.  *Brooks*, 800 F.3d at 1298.  Brooks

16

feared for his safety and gave detailed notes of the threats made to numerous officer defendants. *Id.* The inmate ultimately physically and sexually attacked Brooks when all of the cell doors in the unit opened simultaneously (while a maintenance man and an officer were in the control booth), and a riot ensued. *Id.* at 1299. The plaintiff alleged that the defendants failed to protect him from the attack by not moving him to a cell further away from the threatening inmate. *Id.* at 1301. While plaintiff was able to show that defendants were aware of the threats made against plaintiff and that the cell doors had opened before, plaintiff did not allege that he and the attacker had never been let out of their cells at the same time or that all of the cell doors had opened simultaneously before. *Id.* Therefore, the district court determined, and the appellate court upheld, that the most the plaintiff had shown was that "it was possible for the events that transpired to occur . . . . But mere possibility is not enough - - the plaintiff must plausibly allege a strong likelihood of serious harm."[8] *Id.* Thus, Brooks was unsuccessful in establishing the defendants acted with deliberate indifference, despite their prior knowledge of specific threats against plaintiff, because the defendants acted reasonably in securing plaintiff in his cell and had no plausible reason to assume the two inmates would ever be released, unsecured simultaneously.

Analogous to *Brooks*, Bishop claims the failure of the defendants to move him to a cell further away from his attacker caused the April 15, 2015 assault.

---

[8] The Eleventh Circuit upheld the district court's dismissal of the complaint stating, the plaintiff "was not in imminent or foreseeable danger. [Plaintiff had] not alleged that either he or [the attacking inmate] had ever gotten free of their cells before, let alone at the same time. No case from this Court or the Supreme Court has found so remote a risk to be substantial enough to trigger Eighth Amendment liability." *Id.* at 1303.

Also comparable to *Brooks*, Bishop presents no evidence suggesting an objectively serious risk existed that, prior to the event in question, McCree would actually attack him or how McCree would likely have the opportunity or means to attack him.  In fact, the record indicates that Bishop was safe from any risk of harm on March 26, 2015, as both Bishop and McCree were assigned to the segregation unit where all inmates are housed in single man cells and are handcuffed and searched prior to being removed from their cells.  Therefore, inmate McCree posed no plausible risk of harm to Bishop, despite the verbal threats that McCree shouted from his cell down the tier.  Additionally, Bishop presents no evidence or allegation that there were ever times when the inmates were released from their cells unsecured.  Nor does he describe that attacks were commonplace in the segregation unit despite the extreme solitary confinement and strict security measures in place.  Notably, Bishop was not attacked on March 26, 2015, the day the death threats were allegedly propounded, nor was the attack proximately thereafter.  In fact, the assault was nearly three weeks later – throughout which time the record is devoid of a known risk of harm, as Bishop fails to allege that he feared for his life during the weeks in between, nor did he file grievances during this time identifying additional or continued threats of harm, nor did he continue to request cell transfers.  The lack of details in the record indicating a persistent threat of harm or Bishop's constant fear for his safety following the verbal threats on March 26 supports the notion that there was no objectively plausible or likely risk of harm to Bishop at the time Defendants denied him a cell transfer.

Additionally, Bishop claims that "Inmate McCree ha[d] a violent history in prison but Lt. Bolar, Gillis, and Smith deliberately ignored his warning with

his verbal death threats." (Doc. 29 at 7).   Notwithstanding McCree's violent tendencies, Defendants cannot be held liable in this action unless Bishop can show that the defendants were subjectively aware of a substantial risk of serious harm to Bishop, and Bishop fails to carry his burden.  *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (Attacker's destructive behavior in cell prior to attack did not sufficiently show a 'strong likelihood' of injury to plaintiff.); *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (Deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature"); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (No subjective knowledge of a risk of serious harm where plaintiff merely advised he "had problems" with fellow inmate and stated he was "in fear for [his] life"); *Lavender v. Kearney*, 206 F. App'x 860, 863-64 (11th Cir. 2006) ("General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference.").

        Nowhere in Bishop's complaint does he allege, nor can it be inferred, that the defendants knew McCree plausibly posed a risk of harm to Bishop.  In fact, Bishop contends that, in denying his cell transfer, Defendant "Bolar stated that [he would] be alright!" (doc. 29 at 7; 13 at 8), evidencing her subjective belief that Bishop was not in danger.  Therefore, the failure of defendants to move Bishop to another cell on March 26, 2015, can only demonstrate negligence at worst - not deliberate indifference.  *Brooks*, 800 F. 3d at 1299; *see also Whitley*, 475 U.S. at 319 (The Eighth Amendment is not violated by the negligent failure to protect inmates from violence; the plaintiff must show that the defendants knew of the risk and consciously disregarded it.).  Given that Bishop has failed to carry his burden of establishing deliberate indifference on the part of Defendants, it is

19

recommended that Defendants Bolar, Gillis, and Smith be granted summary judgment and that Bishop's claims against Defendants be dismissed.

    2.  <u>Assault on April 15, 2015.</u>

Similarly, the Court finds the record belies Bishop's allegation that Defendant Ezell acted with deliberate indifference on April 15, 2015 in failing to protect him from the incident at issue.  Construing Bishop's complaint liberally, he claims that Defendants Ezell and Daily knew that inmate McCree posed a risk of harm to him and were, therefore, deliberately indifferent to his safety by allowing Bishop out of his cell prior to securing McCree in his walk cage (contrary to prison regulations).[9]  (Doc. 29 at 7).  For purposes of this motion, the Court takes as true Bishop's assertion that Defendants failed to follow the proper prison regulations for transferring inmates to the outdoor exercise area on March 26, 2015, and that the "incident was passed on to other shifts."  (Doc. 13 at 8).  Nevertheless, Bishop fails to establish either of the requisite elements necessary to proceed on a claim of deliberate indifference.

Deviation or disregard of a prison rule or regulation, as described by Plaintiff, is not *prima facie* evidence to support a § 1983 action.  *See Edward v. Johnson,* 209 F.3d 772, 779 (5th Cir. 2000) ([A] violation of [] prison regulations in itself is not a constitutional violation."); *Smith v. State of Georgia,* 684 F.2d 729 (11th Cir. 1982) (not every deviation from agency's rule violates the Constitution.).  Instead, Plaintiff Bishop must establish both the objective and

---

[9]    In his response to the motion for summary judgment, Bishop alleges, "Ezell and 2 other officers failed to properly perform the physical procedures inside their duties deliberately in a rush not placing concern in plaintiff's safety."  (Doc. 29 at 7).

subjective elements of deliberate indifference to demonstrate an Eighth
Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir.
2014). That being, he must demonstrate that the defendants' conduct
"involve[ed] more than ordinary lack of due care for the prisoner's interests or
safety. " *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251
(1986). "It is obduracy and wantonness, not inadvertence or error in good faith,
that characterize the conduct prohibited by the Cruel and Unusual Punishments
Clause. *Id*. Consequently, to survive Defendants' properly supported motion
for summary judgment, Bishop must show that an objectively substantial serious
risk of harm existed to him on April 15, 2015, that the defendants were
subjectively aware of this risk, and failed to respond in a reasonable manner.
*Caldwell,* 748 F.3d at 1100.

   In analyzing this standard against the facts presented, the undersigned
finds there is no probative evidence that reveals the existence of a substantially
serious risk of harm to Bishop prior to the attack. Just as defendants Bolar, Gillis,
and Smith (as discussed above) had no reason to perceive a plausible threat to
Bishop, neither did Defendant Ezell. At the time of the attack, it had been three
weeks since Bishop retrieved the phone from McCree's cell, and three weeks
since McCree reportedly threatened Bishop. As noted *supra*, the record is devoid
of allegations that McCree continued to threaten harm to Bishop beyond March
26, that Bishop filed any grievance or made any additional request to transfer
cells, or that Bishop continued to fear for his safety in the three weeks preceding
the attack. Thus, it is a far stretch to claim that an officer's knowledge of a single
dispute over a cell phone equates to knowledge of a plausible, much less
probable, death threat or attack on April 15, 2015.

Additionally, the complaint lacks the inclusion of circumstantial evidence which could indicate the defendants should have been aware of a risk of harm to Plaintiff, such as: allegations that assaults commonly occurred during the routine transfer of inmates to the walk cages or that Bishop feared for his life every time he was removed from his cell?  This void in the complaint is odd, as it seems intuitive that if Bishop feared for his safety, he would have emphasized the same to Defendants at the time he was let out of his cell, and he did not?  Notably, McCree was held only two cells away from Bishop's cell, and Bishop would have been acutely aware of when McCree was let out of his cell to proceed outside. However, Bishop does not allege that he inquired if McCree was secured in an exercise cage before proceeding down the tier or that he hesitated to proceed outside because of fear of being out of his cell at the same time as McCree.  And, while questioning McCree's whereabouts is not Bishop's duty, nor is it conclusive as to Defendant's knowledge of plausible harm, it does imply that neither Defendant Ezell nor Bishop seemed concerned with an imminent attack by McCree.

Additionally, Defendant Ezell states that on April 15, 2015:

> My job in Segregation consisted of, handcuffing and pat searching inmates before sending them out for segregation walks.  On the day in question I did handcuff inmate Gerard McCree B/203840 to the rear and pat searched him, no weapon was found.  I watched inmate McCree walk outside.  Once inmate McCree was outside I then handcuffed inmate Jonathan Bishop to the rear and pat searched him. I then watched inmate Bishop walk down the tier to the middle floor, once inmate Bishop reached the middle floor inmate McCree ran back up the stairs and attacked inmate Bishop. I immediately responded and secured inmate McCree in handcuffs.

(Doc. 27-5 at 1).  Ezell's statement affirms he believed both inmates McCree and Bishop were safe, secured in handcuffs and free of weapons when he let them

out of their cells.  Ezell also thought McCree was outside of the dorm at the time he ordered Bishop to proceed down the tier.  Ezell's affirmation confirms his belief that no substantial risk of serious harm was posed to any inmate at the time the assault occurred.  The fact that McCree slipped out of his handcuffs, obtained a weapon, and was able to reenter the segregation unit was not due to the deliberate indifference of Defendant Ezell.  Instead, this represents an unfortunate incident caused by negligence at best.

The record fully supports that the officers on duty, transferring inmates to exercise cages, on April 15, 2015 acted reasonably in the measures they took to ensure Bishop's safety.  It further indicates that as soon as the assault occurred, officers immediately responded to stop the attack and obtained medical care for Bishop directly thereafter.  Consequently, even if Bishop could show, which he has not, that Defendant Ezell knew McCree posed a significant risk of harm to him, the record reveals officers acted reasonably under the circumstances (following routine safety procedures, quickly reacting to the assault, and immediately seeking medical care for injuries), and they cannot therefore be liable pursuant to the Eighth Amendment.  *Farmer*, 511 U.S. at 844-45.  As the law is clear, "[a] prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'"  *Id*. (internal citations omitted).  Thus, the record supports finding that Defendant Ezell did not exhibit deliberate indifference and responded

reasonably to any potential threat of harm posed to Bishop by securing McCree in handcuffs and searching him for weapons.[10]

It is unfortunate that these precautions failed to prevent the attack in question. However, it can not be said that Defendant Ezell was consciously or callously indifferent to Bishop's safety; thus, he can not be found liable under the Cruel and Unusual Punishments Clause. *Farmer*, 511 U.S. at 834; *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection."); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) ("In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least

---

[10]      The Middle District of Alabama has recently reviewed a similar action and reached the same conclusion as the undersigned has today. In *Banks v. Jones*, the plaintiff sued a prison official for failing to protect him from an attack from an inmate with a known propensity of violence. *Banks v. Jones*, No. 2:13-CV-21-WHA, 2015 U.S. Dist. LEXIS 161481 (M.D. Ala. Oct. 30, 2015). In *Banks*, the plaintiff and the inmate attacker were removed from their cells and taken to the exercise yard. *Id*. Both inmates were secured in handcuffs prior to releasing them from their cells. However, at some point after being removed from his cell, the inmate attacker "slipped out of his handcuffs, approached Banks from behind and struck Banks in the head with his handcuffs. [Defendant] immediately ordered [the inmate attacker] to stop his assault and [the attacker] complied with this order." *Id*. at *14-15. Plaintiff alleged he had been at risk of harm and defendant knew of this risk, because the inmate assailant had assaulted another inmate in the preceding weeks. The court determined plaintiff failed to show that at the time of the attack, (1) "an objectively substantial serious risk of harm" was posed to him and (2) that defendants were subjectively aware of the risk of harm. *Id*. at *18. The failure to establish deliberate indifference entitled the defendant to summary judgment.
         The present action is similar, with the only distinguishing factor being that Bishop was threatened by his attacker three weeks prior to the attack. However, the analysis of the facts is the same. In both cases, general threats and known violent past behavior of an inmate does not provide the subjective knowledge of an attack necessary to establish deliberate indifference. *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants]. . . . The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'").

some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.").  Therefore, summary judgment should be granted in favor of Defendant Ezell, and Bishop's claims against him dismissed.

## V.    NOTICE OF JUDGMENT INDEPENDENT OF THE MOTION

Rule 56 of the Federal Rules of Civil Procedure permits the court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P.56(f)(3).  Thus, by filing of this Report and Recommendation, the court **notifies the Plaintiff** of its intention to consider a recommendation to the presiding Chief District Judge that he enter summary judgment, *sua sponte*, in favor of Defendant Earl Daily on the claim raised against him in this action.

Plaintiff Bishop has raised an Eighth Amendment claim against Defendant Daily for failure to protect him from an inmate attack on April 15, 2015.  This claim and all allegations made in Bishop's pleadings (*see* docs. 1, 13, 29) are identical to the claims and allegations made against Defendant Ezell.  Additionally, the record confirms that Officer Daily was inside the segregation unit assisting Officer Ezell with "putting the segregation walk out" on April 15, 2015.  (Doc. 27-1 at 10).  For the reasons stated in this report, after a review of all the relevant facts, it is recommended that summary judgment be entered on behalf of Defendant Ezell and dismissal of all claims against him.

However, Defendant Daily has yet to be served with the complaint and is therefore not a party to this motion for summary judgment.  Given that Bishop presents no additional allegations nor provides any differing facts as to his

claims against Defendant Daily as those against Defendant Ezell, the court maintains that its findings of facts and conclusions of law regarding the claim presented against Defendant Daily would be essentially identical to those of Defendant Ezell.  Accordingly, Plaintiff Bishop is hereby put on notice by this report and the analysis of his claims of the court's intention to consider summary judgment in favor of Defendant Earl Daily.

Accordingly, within the fourteen days provided for filing objections to this report and recommendation, Plaintiff Bishop shall show cause, in writing, why the court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendant Daily on Plaintiff's 42 U.S.C. § 1983 claims.  In responding to this notice, Plaintiff should refer to Fed. R. Civ. P. Rule 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)    showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits,[11] depositions, or other

---

[11]    An affidavit is a sworn statement in writing made under oath or on affirmation before a notary public or other authorized officer.  A declaration under penalty of perjury that meets the requirements of 28 U.S.C. § 1746 is also an acceptable form of evidence.  An affidavit or declaration filed in support of or in opposition to a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated" in the affidavit or declaration.  Fed. R. Civ. P. 56(c)(4).

materials set forth in Rule 56(c)(1)(A) – or by citing such evidence already of record in this matter – which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case.  If plaintiff fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56 the court will accept the evidence identified above as undisputed, for purposes of evaluating whether the court should grant summary judgment in the defendants' favor.  *See* Fed. R. Civ. P. 56(e).  Plaintiff's failure to follow the requirements of Rule 56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding Chief District Judge that he enter summary judgment in the favor of the Defendant Daily and enter final judgment in this case without a trial.

**VI**.    **Conclusion.**

Plaintiff Bishop has failed to show an Eighth Amendment constitutional violation on the part of the Defendants Bolar, Gillis, Smith, and Ezell.  Based on the foregoing, the Court recommends that summary judgment should be **GRANTED** in their favor of and that Plaintiff Bishop's action against these Defendants be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the **Court's intention to recommend the granting of summary judgment for Defendant Earl Daily**, who has not been served with this complaint to date.  Plaintiff is afforded the opportunity to include within any objections he has to this report and recommendation any

reasons that should preclude the entry of summary judgment on behalf of Defendant Daily.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenL.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 6th day of April, 2016.


s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE